CUTRER, Judge.
This appeal arises out of a third party demand by a liability insurer seeking indemnification for payments expended in the settlement of claims arising out of a vehicular collision.
Three suits for damages emanated from a truck-automobile accident. The suits were filed by the owner, driver and passengers of the automobile. These parties-plaintiff were Issac Readoux (owner) and his wife, Evelyn, Valeria Malveaux and Ruby Ned. The defendants were Terry Manley, driver of the truck, Woody Goodgame (title owner of the truck), Delores Franklin, actual owner of the truck, and her liability insurer, National Fire & Marine Insurance Company (National Fire). The suits were all compromised and settled by National Fire. A third party demand was filed by defendants against McNair Transport, Inc. (McNair), and its insurer, Excalibur Insurance Company (Excalibur), seeking indemnification for the sums expended by National Fire in the settlement of the claims.
The third party demand was tried by a jury. The jury answered interrogatories finding that the truck driver was negligent and that such negligence was the cause of the accident. The jury also found that the amounts paid to the damaged parties were reasonable. The jury further found that the third party plaintiffs were not entitled to indemnity from McNair and its insurer, Excalibur.
From a judgment dismissing the third party demand, third party plaintiffs appealed. The third party defendants, McNair and its insurer, Excalibur, answered the appeal contesting the jury’s determination of negligence of the driver of the truck and the reasonableness of the settlements.
The issues presented on appeal are as follows:
(1) Negligence of truck driver;
(2) Reasonableness of the settlement awards; and
(3) Whether the jury erred in finding that third party defendants owed no indemnity to National Fire.
NEGLIGENCE OF TRUCK DRIVER
McNair was the owner of tank trailers which it used to transport liquified petroleum products in interstate commerce. In order to transport the tank trailers, it entered into lease agreements with truck (tractor) owners whereby the owners would supply the truck and driver for the transporting of the tank trailers to destinations assigned by McNair. McNair executed an exclusive lease of five tractors owned by Allied Industries (Allied). Delores Franklin was dispatcher for Allied and she also personally owned an International tractor. She also entered into an exclusive lease of the tractor with McNair.
On April 25, 1979, McNair contacted Allied through Delores Franklin as dispatcher, requesting a tractor to pick up a trailer at its Port Allen, Louisiana,' facility, transport it to a facility whereby it would be loaded with petroleum products and then taken to the destination in Texas. Ms. Franklin sent an Allied tractor and driver as requested by McNair. The tractor picked up the load and began its journey proceeding to its destination in Texas. Upon reaching a *1323 point near Alexandria, Louisiana, the tractor became disabled and could not pull the load.
The driver of the disabled tractor called Ms. Franklin notifying her of the problem. After a conversation with William Connors, the dispatcher for McNair, Ms. Franklin’s International tractor proceeded from Allied’s shop in Prairieville, Louisiana, being driven by Steve Manley, an Allied mechanic. He was accompanied by his wife and assistant mechanic, Terry Manley.
The two mechanics left Prairieville after midnight and proceeded toward Alexandria. Terry assumed the driving duties in Livonia, Louisiana, and shortly thereafter, proceeded north on U. S. Highway 71 toward Alexandria. This highway is a blacktopped two-lane north-south highway. Construction was taking place 2.2 miles north of Morrow, on a flat and smooth, straight stretch of road. Construction signs were present notifying traffic of the construction. Terry Manley stated that she saw the road construction signs. The north-bound traffic was stopped by a flagman so that south-bound traffic could move around the construction work. As Terry Manley proceeded northward, she suddenly noticed that there were three vehicles stopped waiting for the south-bound traffic to proceed.
Terry Manley saw the danger and applied her brakes, skidding 190 feet on the paved portion of the road; she then swerved to the right and skidded 120 feet on the grassy shoulder before the tractor spun around and struck the plaintiff’s automobile which was the middle vehicle in the line of stopped vehicles. The automobile was struck in the right side causing moderate damage and injuries to its three passengers; Evelyn Readoux, the driver and wife of Issac Rea-doux, the owner of the car, Valeria Mal-veaux and her mother, Ruby Ned. This accident occurred at approximately 6:30 A.M. on April 26, 1979.
These facts clearly reveal that Terry Manley was not keeping a proper lookout and failed to keep the tractor under proper control as she entered into this construction zone. The findings of the jury that Terry Manley was negligent in the operation of the vehicle and such negligence was the cause of the accident is clearly supported by the record.
REASONABLENESS OF THE SETTLEMENTS
National Fire settled with Issac Readoux for the property damage to his car in the amount of $2,365.58. The personal injury claims of the three passengers were also settled in the following amounts: Evelyn Readoux, $4,500.00; Valeria Malveaux, $2,700.00 and Ruby Ned, $3,700.00.
Readoux, Malveaux and Ned testified as to the extent of their lost wages and pain and suffering in regard to their personal injury claims. The principal complaints of these parties was pain due to neck and back problems. The reasonableness of the settlement is reflected in the uncontradicted testimony of Dr. Gauthier who treated all three women who suffered from their injuries from six weeks to two months and were unable to work.
Ample testimony was deduced from Issac Readoux concerning the damage to his automobile, the costs of repairs and the rental of a replacement vehicle while his was being repaired. This testimony was corroborated by Uray J. Chenevert, repair manager for Pete Roy Ford in Bunkie, Louisiana, which performed all repair work. We find that the record clearly supports the jury’s determination of damages. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978); Canter v. Koehring Company, 283 So.2d 716 (La.1973).
INDEMNIFICATION
The third party demand by National Fire and its insured seeks indemnification by Excalibur (McNair’s insurer) for the amounts expended for settlements. The jury determined that National Fire and its insured were not entitled to indemnification. We disagree with this determination which we find to be clearly wrong.
*1324 At the outset, Franklin and McNair entered into an- exclusive lease agreement whereby Franklin would remain an independent contractor of McNair but the tractor leased by Franklin could only be used for McNair’s business operations. Paragraph 6 of this lease agreement provides:
“6. Contractor aerees to furnish satisfactory proof of insurance for public liability and property damage necessary to protect and indemnify Carrier when the equipment is heine operated for any reason other than Carrier dispatch instructions. (This coverage is commonly referred to as “Bobtail” insurance coverage.) Contractor further agrees that should he fail to provide such required proof of insurance, Carrier shall have the right, and is hereby authorized, to secure such insurance and deduct the cost thereof from the settlements due and owing Contractor. Contractor also agrees to furnish at his expense the necessary collision coverage for the equipment herein described.” (Emphasis added.)
Under this provision, the question of indemnification by Excalibur turns upon whether the tractor was dispatched by McNair. Connors, the McNair dispatcher, stated that the normal procedure followed by the driver whenever there is a breakdown is to notify the owner. The owner would then notify McNair of the delay and send out another tractor if one was available.
Ms. Franklin, as dispatcher for Allied, and Connors, dispatcher for McNair, had been doing business together for a long period of time. These business dealings arose out of the leasing of the Allied trucks and one owned by Ms. Franklin. As to the drivers that were assigned to the leased trucks, McNair required that they meet certain qualification standards in order to pull a loaded trailer in interstate commerce. When Ms. Franklin dispatched a truck to pull a trailer, she would dispatch a truck and a driver who had met the McNair qualification standards.
If a tractor became disabled during the hauling of a load, Ms. Franklin would notify McNair through its dispatcher, Connors, of the delay. If she had another truck available and it was acceptable to McNair, Ms. Franklin would send the truck to replace the disabled one.
On the day in question, the driver of the disabled tractor notified Ms. Franklin of the situation.[1] Ms. Franklin called Connors and told him that no Allied trucks were available and the only truck that she had available was her International which was then being serviced at Allied’s garage and would be ready to go sometime that evening. She also told Connors that she did not have a qualified driver available to assign to deliver her tractor but could get a mechanic to deliver it to the disabled load. Connors told her that he would look elsewhere for an available tractor. After being unsuccessful in locating another tractor, Connors called Ms. Franklin again and told her to send her International tractor with a mechanic as driver. Ms. Franklin stated that Connors told her that it would be permissible for a mechanic to drive the tractor to Alexandria since the mechanic would not pull a load but would merely switch the International with the disabled tractor. The original qualified driver, John Pease, would continue with the load and the mechanic would return the disabled tractor to Allied’s shop.
As a result of the conversation with Connors, Ms. Franklin stated that she called the chief mechanic for Allied and told him to take the truck to the disabled load when he had finished with its maintenance. She did not specify the name of a particular mechanic that was to drive the tractor. The Manleys were Allied mechanics but not McNair qualified drivers. However, both had driven tractors on other occasions.
Connors’ memory of the exact conversation with Ms. Franklin was vague. He did not recall having told Ms. Franklin to send the truck with a mechanic as driver. He *1325 stated that he could not recall discussing with Ms. Franklin the unavailability of a qualified driver. He assumed a qualified driver would be assigned to the relief tractor.
The deposition of Connors reveals the following in this regard:
“Q. And, you — may I take it that you assumed that a qualified driver would drive the bobtail?

“A. That is correct.

“Q. And, may I also assume that if she had told you that a mechanic would have to drive it that you would not have agreed or—

“A. I don’t know whether I would have agreed or would not have agreed.

******
“Q. Are you saying — Mrs. Franklin has testified that she told you that she did not have a driver — the driver that normally drove this truck was not available, and that a mechanic would have to drive it and that you said that was okay?
* * * * sic *

“Q. Please, let me finish. (Continuing) whether your testimony is that you do not recall whether that is true or whether you are saying that that is not true?

“A. Okay. I am going to say that I do not recall that conversation. And, I would like to go a little further on that.

The way Allied Industrial operation ran, they had a driver pool. They had probably more drivers than they had tractors. Several different drivers drove the same tractors. So I assumed that there would be a qualified McNair driver, or I assumed there would be a — one of the drivers we were familiar with on the truck going to Alexandria.

“Q. Okay. But, you are not saying that she did not tell you this, you are just saying that you do not recall.

“A. That’s exactly right.”

Connors stated that he did not fill out any report on the accident.[2]
As we consider the testimony of Ms. Franklin and Connors and the circumstances surrounding the conversation between the two dispatchers, we conclude that Ms. Franklin’s testimony best accords with reason and probability. We find that Connors (faced with a delay in a delivery of the load, the fact that no other trucks were available, and the further fact that a mechanic driver would only make delivery of the International to the disabled truck) authorized Ms. Franklin to send her International truck to replace the disabled truck. He also authorized her to assign a mechanic to make the delivery of the replacement truck. This action by Connors was a “dispatch” of the replacement truck on behalf of McNair. The jury was clearly wrong in concluding otherwise.[3]
Having found that McNair dispatched the tractor, the indemnity clause of the lease agreement is effective, and the third party plaintiffs are entitled to recover from Excalibur the amounts expended in the settlement of the claims which totaled $13,265.58.
For the foregoing reasons, the judgment of the trial court in favor of Excalibur Insurance Company is reversed; judgment is rendered in favor of the third party plaintiffs and against third party defendant in the amount of $13,265.58. All costs in the trial court and for this appeal shall be paid by third party defendant-appellee.
REVERSED AND RENDERED.

. Both Ms. Franklin’s and Connors’ testimony was presented by reading the depositions of each to the jury.

. Connors was discharged from his job on March 4, 1980. He stated that the reason for his discharge was “log violations.”

. We note that the trial court failed to instruct on the principal issue of the case; i.e., indemnity. The charges fully covered the issues of negligence and damages but the only portion of the charge that could be considered as referring to the indemnity question reads as follows:
“Under Federal law, the certificated carrier in this case, McNair, the lessee, has the full responsibility for the entire operation of temporarily or permanently leased equipment, whether owner-driver or otherwise.”
The lack of instructions may have contributed to the jury’s error.